**Case No. 24-60208**
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT
_____

**ESTATE OF LA'MELLO PARKER; L.S., a minor, by and through Kevin Smith his next friend, Individually and on Behalf of all Entitled to Recover**
**Appellants**

**v.**

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY; TROY PETERSON, HARRISON COUNTY SHERIFF, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; HARRISON COUNTY, MISSISSIPPI; CHRIS ALLEN, HARRISON COUNTY DEPUTY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; HARRY MOSKOWITZ, HARRISON COUNTY DEPUTY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; CITY OF GULFPORT, MISSISSIPPI; MICHAEL MORAN, GULFPORT POLICE OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JOHN DOE, MISSISSIPPI HIGHWAY PATROL TROOPERS 1-8, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY; JOHN DOES, 1-75**
**Appellees**
_____

**On Appeal from the United States District Court for the**
**Southern District of Mississippi, Southern Division**
_____

# PRINCIPAL BRIEF OF APPELLEES
# TROY PETERSON, CHRIS ALLEN AND HARRY MOSKOWITZ
_____

**A. NORRIS HOPKINS, JR., ESQ.**
**MSB 10819**
**HOPKINS, BARVIÉ & HOPKINS, PLLC**
**POST OFFICE BOX 1510**
**GULFPORT, MS 39502**
**228-864-2200 (Office)**
**228-868-9358 (Facsimile)**
**nhopkins@hopkins-law.com**
**Counsel for Defendants-Appellees**

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this court may evaluate possible disqualification or recusal.

1. The Honorable Taylor B. McNeel - District Court Judge

2. Estate of La'Mello Parker - Appellant

3. L.S., a minor, by and through Kevin Smith his next friend - Appellant

4. J. Matthew Eichelberger, Esq. - Attorney for Appellants

5. Madeline Iles, Esq. - Attorney for Appellants

6. Troy Peterson, Sheriff - Appellee

7. Deputy Chris Allen -Appellee

8. Harry Moskowitz - Appellee

9. A. Norris Hopkins, Jr., Esq. - Attorney for Troy Peterson, Sheriff; Deputy Chris Allen and Deputy Harry Moskowitz

10. Harrison County, Mississippi - Appellee

11. Tim Holleman, Esq. - Attorney for Harrison County, Mississippi

12. Patrick Guild, Esq. - Attorney for Harrison County, Mississippi.

13. Mississippi Department of Public Safety -Appellee

14.     Trace D. McRaney, Esq. - Attorney for Mississippi Department of Public Safety

15.     Claire Barker, Esq., Office of the Mississippi Attorney General - Attorney for Mississippi Department of Public Safety

16.     City of Gulfport, Mississippi - Appellee

17.     Jeffrey S. Bruni, Esq. - Attorney for City of Gulfport, Mississippi

18.     Gulfport Police Officer Michael Moran -Appellee

19.     William E. Whitfield, III, Esq. - Attorney for Gulfport Police Officer Michael Moran

20.     Kaara L. Lind, Esq. - Attorney for Gulfport Police Officer Michael Moran


*/s/ A. Norris Hopkins, Jr.*
Counsel for Appellees, Troy Peterson, Sheriff; Deputy Chris Allen and Deputy Harry Moskowitz

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to 5th Cir. Rule 28.2.4, the Appellees herein respectfully suggest that oral argument is not likely to assist this Honorable Court with adjudicating this matter. As such, the Appellees decline to request oral argument and do not believe oral argument would be necessary or helpful in this appeal.

# TABLE OF CONTENTS

**PAGE**

**CERTIFICATE OF INTERESTED PARTIES**                  **i-ii**

**STATEMENT REGARDING ORAL ARGUMENT**                  **iii**

**TABLE OF CONTENTS**                  **iv**

**TABLE OF AUTHORITIES**                  **v-ix**

**STATEMENT OF JURISDICTION**                  **1**

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**                  **2**

**STANDARD OF REVIEW**                  **2-3**

**STATEMENT OF THE CASE**                  **3-9**

**SUMMARY OF THE ARGUMENT**                  **9-10**

**ARGUMENT**                  **10-30**

**CONCLUSION**                  **31**

**CERTIFICATE OF SERVICE**                  **32**

**CERTIFICATE OF COMPLIANCE**                  **33**

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGES**

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...................................................................................2, 20

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...........................................................................................2

*Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) ...........................................18, 26

*Buehler v. Dear*, 27 F4th 969, 989 (5th Cir. 2022)...................................28

*Cabell v. Rousseau*, 130 F.App'x 803, 807 (7th Cir. 2005) ............................. 20-21

*City of Canton , Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)...................................................................................29

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) .......................................30

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988)................................................................................. 29-30

*Cnty of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998).....................................................................25

*Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 1070, 117 L.Ed.2d 261 (1992)................................................................ 25-26

*Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986) .............................. 24-25

*Cooper v. Rutherford*, 503 F. App'x 672 (11th Cir. 2012).......................................23

*DaimlerChrysler Corp. V. Cuno*, 547 U.S. 332, 342, 126 S.CT. 1854, 164 L.Ed.2d 589 (2006)...................................................................................11

*Dawes v. City of Dallas*, 2022 WL 3273833, at \*6 (N.D. Tex. Aug. 11, 2022) 21-22

*Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ..........................................2

*Ellison v. City of Montgomery* 85 F. Supp. 2d 1178, 1182 (M.D. Ala. 1999), *aff'd*, 55 F. App'x 900 (11th Cir. 2002) ...........................................................................21

*Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007) ...............................................17

*Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) ................................................................................................................... 19-20

*Grandstaff v. City of Borger, Tex.,* 767 F.2d 161, 168 (5th Cir. 1985) ............. 13-14

*Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) ........................................28

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) ................................................................................................................................16

*Harmon v. City of Arlington*, 16 F.4th 1159, 1165 (5th Cir. 2021) ........................22

*Hayes v. Gulf Oil Corp.,* 821 F.2d 285, 290-91 (5th Cir. 1987)................................3

*Hicks-Fields v. Harris Cnty., Texas,* 860 F.3d 803, 808 (5th Cir. 2017) ................30

*In Re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008).....................3

*James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008) ......................... 15-16

*Jaques v. Town of Londonberry,* 54 F.App'x 14, 16 (1st Cir. 2002).......................20

*Jones v. Gammage*, No. 4:20-CV-220-SA-JMV, 2023 WL 1453154, at \*23 (N.D. Miss. Feb. 1, 2023) ......................................................................................28

*Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) ........................................ 21-22

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)......................................................22

*Littell v. Houston Indep. Sch. Dist.,* 894 F.3d 616, 622 (5th Cir. 2018)..................29

*Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)........................................................................................................11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)........................................................................ 11-12, 15

*Lytel v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).................................17

*Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986)......23

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)...................................2930

*Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020) .........................................19

*Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019).........................................22

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)...........................30

*Reichle v. Howards*, 556 U.S.—, —, 132 S. Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)................................................................................................ 22-23

*Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).................30

*Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) ...........................23

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009)............................................................................... 16-17

*Scott v. Harris*, 550 U.S. 372, 383 (2007) .......................................................21, 26

*Sierra Club v. Morton*, 405 U.S. 727, 740-741, n. 16, 92 S. Ct. 1361, 1368-1369, n. 16, 31 L.Ed.2d 636 ( 1972).........................................................................11

*Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 41-42, 96 S. Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).............................................................................. 11-12

*Stafford v. Zwicke*, No. SA-22-CV-00314-OLG, 2023 WL 5677859, at *5 (W.D. Tex. Aug 23, 2023) ........................................................................................28

*Summers v. Hinds Cnty, Mississippi*, 508 F. Supp.3d 124, 132 (S.D. Miss. 2020).19

*Summers v. Hinds Cnty., Mississippi,* 650 F. Supp. 3d 502, 513 (S.D. Miss. 2023) ........................................................................................................................26

*Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985) ..... 19-20

*Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.,* 46 F.4th 374, 383 n.5 (5th Cir. 2022) .............................................................................................................3

*Warth v. Seldin*, 422 U.S. 490, 508, 95 S. Ct. 2197, 2210, 45 L.Ed.2d 343 (1975) 11

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) ...............................................27

*Windham v. Harris Cnty.,* 875 F.3d 229, 243 n. 19 (5th Cir. 2017) .........................28

## <u>OTHER AUTHORITIES</u>

28 U.S.C. § 1291 ................................................................................1

28. U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1332 ................................................................................1

28 U.S.C. § 1367(c) ...........................................................................1

42 U. S. C. § 1983 ...................................................................1, 8, 15

FED. R. CIV. P. 8(a)(2) .....................................................................2

FED. R. CIV. P. 12(b)(6) ...................................................................2

FED. R. CIV. P. 12(c) ........................................................................2

FED. R. CIV. P. 12(h)(3) ...................................................................3

U.S. CONSTITUTION ART. III § 2 ...............................................11

U.S. CONST. Amend. IV. ...............................................................18

U.S. CONST. Amend. XIV, § 1 ......................................................25

## STATEMENT OF JURISDICTION

The Estate of La'Mello Parker filed suit against the Appellees under 42 U.S.C. § 1983 for a violation of La'Mello Parker's constitutional rights. The United States District Court for the Southern District of Mississippi had jurisdiction pursuant to 28 U.S.C. § 1331. Diversity jurisdiction also existed pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeded $75,000.00, and the Appellants are residents of Louisiana, and the Appellees are residents of Mississippi. The district court also had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The state law claims were remanded to the Circuit Court of the First Judicial District of Hinds County, Mississippi.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because it is an appeal of a final order of a district court. On April 25, 2024, the Appellants timely appealed the United States District Court for the Southern District of Mississippi's March 29, 2024, Final Judgment and Memorandum Opinion and Order which dismissed the Appellants' federal claims and remanded the Appellants' state law claims to the Circuit Court of the First Judicial District of Hinds County, Mississippi.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. The Appellants had no standing to bring claims against Sheriff Troy Peterson, Deputy Chris Allen and Deputy Harry Moskowitz as there is no injury to Appellants traceable to these individuals.

2. Sheriff Troy Peterson, Deputy Chris Allen and Deputy Harry Moskowitz are entitled to qualified immunity and dismissal of claims made against them.

## STANDARD OF REVIEW

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *In Re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556). Finally, "A defect in the district court's subject matter jurisdiction...may be raised at any time by the parties or the court itself and cannot be waived." *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 290-91 (5th Cir. 1987). "Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction; under Rule 12(h)(3), '[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.'" *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 383 n.5 (5th Cir. 2022) (quoting FED. R. CIV. P. 12(h)(3)).

## STATEMENT OF THE CASE

This incident began around noon on May 3, 2021, when, according to the Amended Complaint, detectives from the East Baton Rouge Sheriff's Department responded to a shooting in Baker, Louisiana, where they found two individuals shot to death and La'Mello Parker, a three-month old child, missing. **ROA.19**. La'Mello's father, Eric Smith, was suspected of committing the murders and

kidnapping, and detectives began searching for him. **ROA.20.** With assistance from state and local authorities using a cell tower to zero in on Smith's location, the detectives soon located Smith driving eastbound with La'Mello on Interstate 10 in Ascension Parish, Louisiana. By the time Louisiana authorities caught up to him, Smith was approaching the Mississippi state line, so authorities from the Mississippi Highway Patrol and the Hancock County, Mississippi Sheriff's Office took over Smith's pursuit. **ROA.20.**

Attempting to end the chase, a Hancock County deputy laid down spike strips across the interstate near mile marker 11. These spike strips punctured some of Smith's tires, bringing the vehicle to a near stop. Smith then exited the vehicle holding La'Mello to his chest, pointed a gun at Mississippi Highway Patrolman, fired one shot, reentered his vehicle with La'Mello and continued driving east on Interstate 10. During this brief altercation, no officers returned fire. **ROA.20**.

Two miles down the road, at mile marker 13, a regional task force of law enforcement officers from the Mississippi Bureau of Investigations, the Mississippi Department of Corrections, the United States Marshal's Service, the Harrison County Sheriff's Department and the Biloxi Police Department joined the pursuit. The task force knew that Smith had just shot at law enforcement and that La'Mello

was also in the vehicle.  **ROA.20-21.**

Around mile marker 20, a Homeland Security Investigations helicopter also began following Smith's vehicle.  Using an infrared camera, the helicopter provided detailed information about what was happening inside Smith's vehicle – that Smith had a handgun in his right hand and was holding La'Mello against his chest.  Around this same time, the task force alerted a Biloxi Police Department Special Response Team stationed up ahead on Interstate 10 that Smith was heading their way.  This Special Response Team included a sniper, tactical entry personnel and hostage negotiation teams.  They too were informed that La'Mello was held against Smith's chest in the vehicle.  **ROA.21-22.**

At mile marker 29, spike strips were again deployed to puncture Smith's remaining tires, but the spikes failed.  Two miles later, after narrowing the road using other vehicles, law enforcement forced Smith to ride over a third set of spike strips which finally punctured Smith's remaining tires, yet Smith continued to drive the vehicle.  Near mile marker 35, Harrison County Sheriff's Department dispatch once again informed its officers that Smith was holding La'Mello against his chest. **ROA.21.**

During this time, two roadblocks had been set up.  The first was at mile marker

41 in response to the Mississippi Highway Patrol's request to move Smith's vehicle to the right lane of the interstate to force him off the road. The second was set up by the Biloxi Special Response Team near mile marker 44 and included snipers and hostage negotiators. **ROA.22.**

But before Smith reached either roadblock, a supervisory officer with the Harrison County Sheriff's Department, allegedly Defendant Sheriff Troy Peterson himself, ordered the pursuit be ended by pushing Smith's vehicle off the interstate. In response, Defendant, Harrison County K9 Deputy Chris Allen, pushed Smith's vehicle from behind at a slow rate of speed, forcing both his vehicle and Smith's vehicle into the median. Smith's vehicle spun nearly 180 degrees and was now facing in the opposite direction. Deputy Allen's vehicle was side-by-side with Smith's, nearly touching the driver's side doors. Deputy Allen was able to drive his vehicle forward about 15 feet before getting stuck in the mud. Deputy Allen then exited the vehicle and moved toward cover, before stopping and drawing his weapon and pointing it back at Smith who was still in his vehicle with La'Mello. Other law enforcement officers taking cover nearby also drew their weapons and pointed them at Smith in his vehicle. At this point, no shots had been fired by the officers. **ROA.22-23.**

A few seconds later, Deputy Allen noticed that the police dog in his vehicle had escaped and was running free in the middle of the standoff. Deputy Allen then lowered his weapon and tried to corral the dog. While this was happening, Smith lowered his car window and fired a shot. At least ten law enforcement officers then returned fire. Smith was killed and, tragically, La'Mello was also hit by a bullet intended for Smith and later died. **ROA.23.**

The law enforcement officers who fired their service weapons were Harrison County Deputy Harry Moskowitz, Gulfport Police Officer Michael Moran, Mississippi Department of Corrections/United States Marshal Task Force Officer Sam Tucker, and John Doe Mississippi Highway Patrol Troopers1-8. Ballistics testing later revealed that John Doe Mississippi Highway Patrol Trooper 1 fired the shot that killed La'Mello. That trooper's identity remains unknown to the Appellants and the public. **ROA.24.**

The Appellants are Eric Smith's father and Smith's other son (La'Mello's paternal grandfather and brother). After filing their original complaint in Hinds County Circuit Court on November 1, 2022, they received leave and filed their Amended Complaint on April 25, 2023. They alleged violations of state and federal law and named the Mississippi Department of Public Safety, the City of Gulfport,

Harrison County, Mississippi, and, in their individual and official capacities, Harrison County Sheriff Troy Peterson, Harrison County Deputies Chris Allen and Harry Moskowitz, Gulfport Police Officer Michael Moran, John Doe Mississippi Highway Patrol Troopers 1-8 and John Does 1-75 as Appellees.  Against the Mississippi Department of Public Safety, the City of Gulfport, and Harrison County, Appellants alleged violations of state law under the Mississippi Tort Claims Act, including reckless endangerment, failure to train, and lack of communication, as well as federal claims under 42 U.S.C. Section 1983, including violations of La'Mello's Fourth and Fourteenth Amendment rights against "unreasonable seizure," use of "excessive force," and failure to intervene.  **ROA.26-27, 29-34.**  The Appellants have also brought state law reckless endangerment claims under the Mississippi Tort Claims Act and federal claims under 42 U.S.C. Section 1983 against the individual Appellees: Sheriff Peterson, Deputies Allen and Moskowitz, Officer Moran, John Doe Mississippi Highway Patrol Troopers 1-8 and John Does 1-75, alleging the same constitutional violations.  **ROA.27-32.**  On May 24, 2023, the suit was removed to the United States District Court for the Southern District of Mississippi, Northern Division, before being transferred to the Southern Division.  **ROA 406.**

On August 21, 2023, the Mississippi Department of Public Safety moved for

Judgment on the Pleadings (**ROA.376-381**) alleging that the Appellants' state law claims should be dismissed because it is immune under the Mississippi Tort Claims Act's discretionary function and the Appellants' federal claims should be dismissed because it is entitled to sovereign immunity.  **ROA.386-395.**  Soon after, Officer Moran moved to dismiss (**ROA.398-402**) alleging that the Appellants' lack standing to bring their claims, or that he is entitled to qualified immunity.  **ROA.411-420.**

Officer Moran also challenged the sufficiency of service alleging that Appellants were improperly granted a second extension of time by the state court to serve several Appellants, including himself.  **ROA.420-421.**  On September 11, 2023, Sheriff Peterson and Deputies Allen and Moskowitz also moved to dismiss (**ROA.427-429**) adopting in full Officer Moran's arguments in his Motion (**ROA.398-402**), Memorandum (**ROA.403-423**) and Rebuttal (**ROA.478-491**). Finally, Harrison County moved to dismiss (**ROA.499-501**) on January 31, 2024, also adopting Officer Moran's arguments.  On February 13, 2024, the City of Gulfport joined Officer Moran's Motion to Dismiss.  **ROA.376-381, 502-505.**

## SUMMARY OF ARGUMENT

The Appellants have no standing to bring claims against Sheriff Troy Peterson, Deputy Chris Allen and Deputy Harry Moskowitz (and to that extent,

Harrison County, Mississippi) as there is no injury to Appellants traceable to these Appellees. An injury to the Appellants caused by the Appellees is an indispensable part of the Appellants' case. There is no evidence of an injury to the Appellants as a result of any act by these Appellees.

These Appellees are additionally entitled to Qualified Immunity. The actions of these Appellees did not violate any constitutional rights of the Appellants. The actions in returning fire when fired upon and for Deputy Allen in pushing Smith's car to a stop was not unreasonable under the totality of the circumstances and certainly a reasonable officer on scene would have responded in like manner. None of these Appellees, nor anyone associated with Harrison County, Mississippi, shot La'Mello Parker. The manner to stop Smith's car resulted in no injury to Appellants.

## **ARGUMENT**

1. Standing

All the Appellees, except for the Mississippi Department of Public Safety, first challenge the Appellants' standing to bring these claims. They note that the Appellants allege in their Amended Complaint that La'Mello was "shot to death by a member of the Mississippi Highway Patrol," and that later ballistics testing revealed that John Doe Mississippi Highway Patrol Trooper 1 fired the shot that

killed La'Mello.  **ROA.16, 24, 411.**  As such, the Appellants have not alleged any injury that is fairly traceable to the Appellees or Harrison County, Mississippi.

The Constitution gives federal courts the power to adjudicate only genuine "Cases" and "Controversies."  Art. III, § 2.  That power requires that litigants have standing.  A plaintiff has standing only if he can "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *DaimlerChrysler Corp. V. Cuno*, 547 U.S. 332, 342, 126 S.CT. 1854, 164 L.Ed.2d 589 (2006) (internal quotation marks omitted); see also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).  This requirement has been broken down into three elements.

First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. 555, 560; see also *Warth v. Seldin*, 422 U.S. 490, 508, 95 S. Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-741, n. 16, 92 S. Ct. 1361, 1368-1369, n. 16, 31 L.Ed.2d 636 ( 1972); and *Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)).  Second, there must be a causal connection between the injury and the conduct complained of – the injury must be

"fairly...trace[able] to the challenged action of the defendant," and not the result of independent, third party action. *Lujan*, 504 U.S. 555, 560-561 (citing *Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 41-42, 96 S. Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Finally, it must be "likely," rather than merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561 (citing *Simon*, 426 U.S. at 38, 43).

Since these elements are not mere pleading requirements but "rather an indispensable part of the plaintiff's case," each element must be supported just like any other matter on which the plaintiff bears the burden of proof – with "the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. 555, 560-561 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-889, 110 S. Ct. 3177, 3185-3189, 111 L.Ed.2d 695 (1990). Here, at the pleading stage, general factual allegations of injury resulting from the Appellees' conduct may suffice, "for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 504 U.S. at 561 (internal quotations omitted).

These Appellees argue that because La'Mello was allegedly "shot to death by a member of the Mississippi Highway Patrol," and later ballistics testing confirmed

that John Doe Mississippi Highway patrol Trooper 1 fired the shot that killed La'Mello, the Appellants' claims are not fairly traceable to them or Harrison County, Mississippi. **ROA.16, 24, 411.** Knowing that there is a specific officer, Highway patrol Trooper 1, who accidentally shot and killed La'Mello necessarily excludes every individually named Appellee herein, since we are not "Highway Patrol Trooper 1."

The Appellants counter that the Fifth Circuit has held that shootings involving multiple law enforcement officers do not require specific findings of who delivered the actual killing stroke. *Grandstaff v. City of Borger, Tex.,* 767 F.2d 161, 168 (5th Cir. 1985). There, James Grandstaff was shot multiple times by law enforcement officers who mistook Grandstaff for an armed suspect they were tracking near Grandstaff's home. *Id.* At 165. At trial, the officers claimed that "without evidence and a finding that a particular defendant fired the shot that actually struck and killed Grandstaff, there can be no constitutional deprivation laid at the feet of any officer." *Id.* At 168. The Fifth Circuit disagreed, commenting that the officers "may as well argue that no one on a firing squad is responsible for the victim's death unless we know whose bullet first struck the heart. The firestorm that killed James Grandstaff was in all respects a joint operation: the same recklessness...and the same object."

*Id.* The Fifth Circuit thus found that each participant was as much at fault as the others, and all were liable because "each officer who fired his gun encouraged others to do the same." *Id.*

This case is distinguishable for one key reason – the argument in *Grandstaff* revolved around the fact that the identity of the officer who killed Grandstaff was *unknown*. Grandstaff appears to have been shot multiple times, and so the death blow could have been delivered by any one of or all the officers who opened fire. *Grandstaff*, 767 F.2d at 168 (noting that the officers "poured their gunfire at the truck and into the person of James Grandstaff."). Hence, the Fifth Circuit compared the shooting to that of a firing squad. *Id.* The unknown identity of the killer, and the fact that Grandstaff was shot multiple times, was sufficient to return a verdict against every officer who fired their gun. *Id.* Also, law enforcement in *Grandstaff,* in a case that took place back in the 1980's, apparently did not use the advanced ballistics testing that was available here. Moreover, standing – the issue presented here - was not at issue in *Grandstaff*, likely because the identity of the killer was *unknown.*

Unlike *Grandstaff*, the identify of the officer here *is known*, at least enough to absolve these individual Appellees. Again, ballistics testing revealed that the law enforcement officer who shot La'Mello – the only bullet to strike the child – was *not*

Troy Peterson, Chris Allen, or Harry Moskowitz. **ROA.16, 24.** In fact, Sheriff Peterson and Deputy Allen *did not even fire* their weapons. *Id.* So, the Appellants cannot meet the second element of standing: a *causal connection* between the injury and the conduct complained of. *Lujan*, 504 U.S. 555, 560-561. Thus, the Appellants' lack standing to bring this claim against Sheriff Peterson, Deputies Allen and Moskowitz, or their employer, Harrison County, Mississippi. As such, the District Court's findings that standing did not apply to multiple Appellees should be affirmed.

      2.   <u>Claims under Section 1983</u>

The District Court went a step further and correctly found that claims against **<u>EVERY</u>** Appellee lacked merit. Section 1983 provides a remedy against one who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983. To recover, plaintiffs "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008) (internal quotations omitted). Alleged here are violations of La'Mello's Fourth and Fourteenth Amendment rights against unreasonable seizure,

use of excessive force, and failure to intervene by the Appellees.  **ROA.27-31.**

a.    Qualified Immunity

The individual Appellees: Sheriff Peterson, Deputy Allen, and Deputy Moskowitz argue that the Appellants' Fourth and Fourteenth Amendment claims lack merit because they are entitled to qualified immunity.  **ROA.404.**  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).  Determining whether a government official is entitled to qualified immunity involves a two-question analysis. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009).

The first "constitutional violation question" is, whether taking the facts in the light most favorable to the plaintiff, the each individual officer's alleged conduct violated a constitutional right. *Saucier*, 533 U.S. at 201.  If the alleged conduct did not violate a constitutional right, the inquiry ends because there is no constitutional violation for which the government official would need qualified immunity. *Id.* But if the alleged conduct does amount to a constitutional violation, one must move to

the second, "qualified immunity question" – that is, whether the right was *clearly established* at the time of the conduct. *Id.* (emphasis added). Qualified immunity allows for officers to make reasonable mistakes about whether their conduct violates the law, and an officer's mistake is reasonable when there are insufficient indicia that this conduct was illegal. See *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. If the answer to *both* the constitutional violation and qualified immunity questions is yes, the officer is *not* entitled to qualified immunity. *Lytel v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

Claims of excessive force in conducting a seizure, as here, further jumbles the *Saucier* inquiry. *Lytle*, 560 F.3d at 410. This complication stems from having to make two "overlapping objective reasonableness inquir[ies]." *Saucier*, 533 U.S. at 210 (J. Ginsburg, concurring). In these cases, the first "constitutional violation question" asks whether the officer's seizure met the Fourth Amendment's reasonableness requirement. *Lytle*, 560 F.3d at 410. And if the officer's conduct was *unreasonable*, the inquiry proceeds to the second, "qualified immunity

question" – whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. Put another way, this second, "somewhat convoluted question" asks whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable. *Lytle,* 560 F.3d 410.

So here, the two questions are: (1) whether the individual Appellees' alleged conduct amounted to an unreasonable seizure, in violation of La'Mello's constitutional rights, and if so, (2) whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated La'Mello's constitutional rights. The Appellants assert that Deputy Moskowitz used excessive force by shooting in the direction of La'Mello and the car in which he was in, as well as Deputy Allen pushing the vehicle in which he was unrestrained, violating La'Mello's Fourth Amendment and Fourteenth Amendment rights to be free from an unreasonable seizure. **ROA.29-30.**

"The Fourth Amendment protects against the unconstitutional seizure or arrest of persons, and use of force in any arrest." U.S. CONST. Amend. IV. "A 'Fourth Amendment seizure' occurs 'when there is a governmental termination of freedom of movement *through means intentionally applied*.'" *Brower v. Cty. of Inyo*, 489

U.S. 593, 597 (1989) (emphasis in original). As alleged, there are two possible "seizures" here: (1) shooting La'Mello and (2) Deputy Allen pushing Smith's vehicle off the road.

The Shooting

The Fifth Circuit has acknowledged that being shot, even unintentionally, can invoke the Fourth Amendment. See *Lytle*, 560 F.3d at 410 (5th Cir. 2009) (noting that "[t]he parties do not dispute...that Heather Lytle was "seized" within the meaning of the Fourth Amendment when O'Donnell's bullet struck her."). Indeed, just being shot at, under the right facts, can be enough to raise claims under the Fourth Amendment. See *Summers v. Hinds Cnty, Mississippi*, 508 F. Supp.3d 124, 132 (S.D. Miss. 2020). So the question turns to whether that seizure was objectively reasonable. After all, the Constitution protects against only *unreasonable* seizures – not all seizures. See *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020) (affirming the right to be free of unreasonable searches and seizures).

Assessing the reasonableness of a police officer's use of force involves 'a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443

(1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985)). This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness of an officer's conduct is judged "objectively," that is, without reference to the subjective intent or motivation that underlies the officer's conduct. *Id.* at 397. The facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" are also considered. *Id.* at 396. This includes accounting for the difficult and often split-second decisions that police officers must make in carrying out their duties. *Id.* at 396-97.

No reasonable jury could find that Deputy Moskowitz's use of force in firing his service weapon to defend against and subdue Smith, a murderer who had just fired first at law enforcement, was objectively unreasonable. *Ashcroft*, 556 U.S. at 678; and see *Jaques v. Town of Londonberry* 54 F.App'x 14, 16 (1st Cir. 2002) (finding that "given the compressed time frame, the highly charged environment, and the kaleidoscopic sequence of events, a rational jury could not find that Sgt. Dussault's return of fire was objectively unreasonable"); *Cabell v. Rousseau*, 130

F.App'x 803, 807 (7th Cir. 2005) (holding that in the execution of a warrant, officers did not act unreasonably by returning fire because police may respond to mortal threats with a proportionate amount of force, including deadly force); and *Ellison v. City of Montgomery* 85 F. Supp. 2d 1178, 1182 (M.D. Ala. 1999), *aff'd*, 55 F. App'x 900 (11th Cir. 2002) (noting that "any reasonable juror would undoubtedly conclude that [the officers'] use of deadly force in self-defense against Ellison's gunshots was well within the realm of constitutionally permissible behavior.").

Indeed, the societal need and objective reasonableness for police officers to fire their weapons is at its zenith in response to an active shooter. See *Scott v. Harris*, 550 U.S. 372, 383 (2007) (describing the "paramount governmental interest in ensuring public safety."). There was no unreasonable seizure stemming from La'Mello's shooting – and therefore, no constitutional violation.

But even if there had been, La'Mello's constitutional right was not so clearly established that every reasonable officer would have known that their conduct was against the law, so Deputy Moskowitz would still receive qualified immunity.

It bears repeating that qualified immunity's second prong "requires the plaintiff to 'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances...was held to have violated the

[Constitution].'" *Dawes v. City of Dallas*, 2022 WL 3273833, at *6 (N.D. Tex. Aug. 11, 2022) (citing *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). A right is "clearly established" only if preexisting precedent "ha[s] placed the...constitutional question beyond debate." *Harmon v. City of Arlington*, 16 F.4th 1159, 1165 (5th Cir. 2021). And that burden is "heavy." *Id.* "[A]s the Supreme Court has repeatedly admonished lower courts, we must define [the] constitutional question with specificity." *Id.* at 1166. The dispositive question is whether the violative nature of *particular* conduct is clearly established. *Id.* (emphasis in original).

This specificity requirement assumes special significance in excessive force cases, where officers must make split-second decisions to use force. *Harmon*, 16 F.4th at 1166. "[O]vercoming qualified immunity is especially difficult in excessive force cases." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). And courts must refrain from the temptation of "Monday-morning quarterbacking" an officer's split-second decisions. *Dawes*, 2022 WL 3273833, at *12. "[P]olice officers are entitle to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Harmon*, 16 F.4th at 1166 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). Indeed, a clearly established right is "sufficiently clear that *every reasonable official* would have understood that whet he is doing violates

that right." *Reichle v. Howards*, 556 U.S. 648, 664, 132 S. Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (emphasis added). If that sounds like a high bar, it is because it is - qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986).

The general rule is when an officer uses deadly force, that deadly force is considered excessive and unreasonable "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Garner*, 471 U.S. at 11). The Appellees had probable cause to believe that Smith posed a threat of serious physical harm – he had murdered two people, previously shot at law enforcement in Hancock County, kidnapped his son, and just opened fire again. La'Mello's presence at the scene due to Smith's violent and irate actions does not change the outcome based on the law. See *Cooper v. Rutherford*, 503 F. App'x 672 (11th Cir. 2012) (granting qualified immunity for police officers after potential hostages – a mother and child – were shot by the officers while the officers were trying to shoot the armed bank robber seeking to steal the car the mother and child were in).

This Court has discussed qualified immunity situations when the victim was an innocent passenger. In *Lytle*, the Court denied qualified immunity to a police officer who fired at a fleeing car and killed one of the suspect's passengers. *Lytle*, 560 F.3d at 404. That holding turned on this Court's finding that the car was moving away from the officer and had already traveled some distance when the officer opened fire. *Id.* at 409. This Court held that a reasonable jury could conclude that a receding car "did not pose a sufficient threat of harm such that the use of deadly force was reasonable." *Id.* at 416. In doing so, this Court recognized that if the facts were as the officer alleged, and he fired as the car was coming towards him, "he would likely be entitled to qualified immunity" based on the "threat of immediate and severe physical harm." *Id.* at 412. Here, responding with deadly force while Smith was actively firing a weapon at law enforcement is completely different than in *Lytle*, where the suspect was driving away from the officer and posed no "threat of immediate and severe physical harm." *Id.*

The Appellants further cite *Coon v. Ledbetter*, and argue it is analogous to the situation here. **ROA.460-461**; 780 F.2d 1158, 1160-61 (5th Cir. 1986). But that case is distinguishable for at least one critical reason. Once *Coon* stumbled into the trailer, ostensible to protect his daughter from police gunfire, only then, after a

standoff and an attempt to get Coon to cooperate, did the police deputy fire indiscriminately into the trailer without even seeing Coon. *Coon*, 780 F.2d at 1160-61. The recklessness of firing buckshot into a trailer in which a suspect, no longer actively firing his weapon and had fled, is quite different than here, where Smith could be seen and was actively firing at law enforcement. *Id.* Ultimately, even if there had been a constitutional violation – which there was not, the violation was not so clearly established that it would defeat qualified immunity for Deputy Moskowitz.

The Appellants also have no Fourteenth Amendment claim. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall...deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. Such substantive due process claims preclude liability unless a defendant's actions were "arbitrary or conscience shocking." *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 1070, 117 L.Ed.2d 261 (1992). "[O]nly the most egregious official conduct can be said to be 'arbitrary in constitutional sense[.]'" *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (quoting *Collins*, 503 U.S. at 129, 112 S. Ct. At 1070).

First, the Appellants' Fourteenth Amendment claim falters because a Fourth Amendment seizure already took place (La'Mello's shooting), and so there is no remedy under the Fourteenth Amendment. "A Fourteenth Amendment excessive force claim covers any excessive force applied when plaintiffs *were not seized* within the meaning of the Fourth Amendment." *Summers v. Hinds Cnty., Mississippi,* 650 F. Supp. 3d 502, 513 (S.D. Miss. 2023). Second, even if there were no Fourth Amendment seizure, Deputy Moskowitz's actions of returning fire at an armed and dangerous suspect do not shock the conscience. *Collins*, 503 U.S. at 128. After all, when officers are forced to make immediate, hasty decisions, "even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock" that implicates the Constitution. *Id.* at 853-54. Indeed, purpose to "cause harm is needed for due process liability in a pursuit case." *Id.* Therefore, Appellants' Fourteenth Amendment claims involving La'Mello's shooting are also without merit.

<u>The Ramming</u>

Deputy Allen's pushing Smith's vehicle was arguably a seizure under the Fourth Amendment. See *Scott,* 550 U.S. at 381 (noting that the parties did not "contest that [defendant's] decision to terminate the car chase by ramming his bumper into respondent's vehicle constituted a "seizure"); *Brower*, 489 U.S. at 597

(finding that if "the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure"). The Appellants allege no injury to La'Mello that resulted from the contact of the vehicles and even admitted at the motion hearing that the vehicles contacting each other was not a constitutional violation. The only argument they make seeks to link the pushing to the shooting – illustrating an alleged unnecessary escalation of the situation that led to La'Mello's death. **ROA.30**. Because there was no alleged injury from the contact of the vehicles, and even if there were, it would not rise to a constitutional violation, the Appellants have no viable Fourth or Fourteenth Amendment claims. The contact of the vehicles was made at a low rate of speed while Smith's vehicle had no tires.

3.   Bystander Liability

The Appellants also allege failures to intervene because every Appellee "had the duty to prevent others from depriving La'Mello of his civil rights and refused to do so." **ROA.30-31.** This is also known as "bystander liability." See *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (acknowledging bystander liability allegations under Section 1983 because a police officer allegedly "failed to stop Ariaz, a fellow officer, from violating Whitley's constitutional rights).

Section 1983 bystander liability arises "where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (internal quotations omitted). But as discussed, no constitutional right was violated. And therefore, there can be no *failure to intervene* in preventing a violation. "Bystander liability arises only where the plaintiff can allege and prove another officer's use of excessive force." *Buehler v. Dear*, 27 F4th 969, 989 (5th Cir. 2022) (quoting *Windham v. Harris Cnty.,* 875 F.3d 229, 243 n. 19 (5th Cir. 2017)); see also *Jones v. Gammage*, No. 4:20-CV-220-SA-JMV, 2023 WL 1453154, at *23 (N.D. Miss. Feb. 1, 2023) (while finding a plausible bystander liability claim, the court noted that without an alleged underlying constitutional violation, the bystander liability claim would fail as a matter of law). Indeed, inherent in "a bystander claim is the necessity for a constitutional violation to which the officer must respond." *Stafford v. Zwicke*, No. SA-22-CV-00314-OLG, 2023 WL 5677859, at *5 (W.D. Tex. Aug 23, 2023) (citing *Whitley*, 726 F.3d at 646). Accordingly, the Appellants' failure to intervene claims are dismissed.

4.      Municipal Liability under Section 1983

The Appellants also bring Section 1983 claims against Harrison County, Mississippi, alleging that "the formal and informal actions of these...Defendants reflect policies, practices, customs, and procedures that permit and cause constitutional violations." **ROA.33**.   Specifically, Harrison County allegedly refused to "develop policies, train, and supervise their officers regarding the chain of command and interagency communication issues" and this failure "led directly to a confused, uncoordinated law enforcement response, which was the moving cause behind La'Mello's death." *Id.*

Municipalities and other local governments may be sued only under Section 1983 if the plaintiff's alleged deprivation of rights stems from the government's unconstitutional or illegal policies.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Littell v. Houston Indep. Sch. Dist.,* 894 F.3d 616, 622 (5th Cir. 2018). The bar on vicarious liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation.  See *City of Canton , Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989).  What this means is that a local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Monell*, 436 U.S. at 690). To be successful, there must be: "1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom.'" *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

**This analysis begins and ends with the third element**. The Appellants cannot meet that element since there was *no underlying violation* of constitutional rights for any alleged policy or custom to be the moving force behind. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that "if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." (emphasis in the original)); and *Hicks-Fields v. Harris Cnty., Texas,* 860 F.3d 803, 808 (5th Cir. 2017) (noting that, "as is well established, every *Monell* claim requires an underlying constitutional violation."). With no avenue for municipal liability against Harrison County, those claims were properly dismissed by the trial court.

# CONCLUSION

The Appellees agree with the legal findings and conclusions of the trial court and have incorporated such findings and legal authorities this Appellees' principal brief. For the reasons stated hereinabove, the Memorandum and Opinion (**ROA.519-547**) and the Final Judgment (**ROA.548**) should be affirmed.

RESPECTFULLY SUBMITTED, this the 20th day of December, 2024.

> HARRISON COUNTY SHERIFF TROY PETERSON, HARRISON COUNTY DEPUTY CHRIS ALLEN and HARRISON COUNTY DEPUTY HARRY MOSKOWITZ, Appellees
>
>
> */s/ A. Norris Hopkins, Jr.*
> A. NORRIS HOPKINS, JR., ESQ.
> MSB No. 10819
> **ATTORNEY FOR APPELLEES**

## CERTIFICATE OF SERVICE

I certify that on December 20, 2024, an electronic copy of the Appellees' Brief was filed using the Court's Electronic Filing System and an electronic version of the Appellees' Brief was sent by the Court's Electronic Notification System to all counsel of record, as follows:

J. Matthew Eichelberger, Esq. - matt@ike-law.com
Madeline Iles, Esq. - madeline@ike-law.com
**Attorneys for Appellants**

Tim Holleman, Esq. - tim@boyceholleman.com
Patrick Guild, Esq. - patrick@boyceholleman.com
**Attorneys for Harrison County, Mississippi**

Trace McRaney, Esq. - trace@ddkf.com
**Attorney for Mississippi Department of Public Safety**

Jeffrey Bruni, Esq. - jbruni@gulfport-ms.gov
**Attorney for City of Gulfport**

William E. Whitfield, III, Esq. - bwhitfield@cctb.com
Kaara L. Lind, Esq. - klind@cctb.com
**Attorneys for Officer Michael Moran**

This the 20th day of December, 2024.

/s/ A. Norris Hopkins, Jr.
Counsel for Appellees

# CERTIFICATE OF COMPLIANCE

Under 5th Cir.R.32.2 and 32.3, the undersigned certifies this Brief complies with the type-volume limitations of Fed.R.App.P 32(a)(7).

1.      Exclusive of the exempted portions in 5th Cir.R.32.2, the brief contains 6,776 words.

2.      The Brief has been prepared in proportionally spaced typeface using WordPerfect X7, in Times, 14 point.

3.      The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed.R.App.P. 32(a)(7), may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.

This the 20th day of December, 2024.


/s/ A. Norris Hopkins, Jr.
Counsel for Appellees